# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>　　Plaintiff<br><br>v.<br><br>Jose Francisco Vargas,<br><br>　　Defendant | 2:16-cr-00334-JAD-NJK<br><br>**Order Overruling Objections, Adopting Report and Recommendation, and Denying Motion to Suppress**<br><br>[ECF Nos. 17, 34] |

　　Jose Francisco Vargas stands charged with one count of being a felon in possession of a firearm and one count of being an illegal alien in possession of a firearm.[1] Vargas moves to suppress the .38 caliber firearm that was found in his pocket during a November 2016 traffic stop,[2] arguing that Las Vegas Metropolitan Police ("Metro") officers did not have a legal basis to stop the car he was a passenger in or to order him out of the car and pat him down after it was stopped.[3]

　　Following an evidentiary hearing, Magistrate Judge Koppe found that the stop was lawful and that the officers were legally authorized to order Vargas out of the car.[4] Neither party objects to these findings.[5] Judge Koppe also found that Officer Kunz's patdown of Vargas was lawful because he had reasonable suspicion to believe that Vargas was armed and presented a threat to officer safety and, therefore, Judge Koppe recommends that I deny Vargas's motion.[6] Vargas objects to this

---

[1] ECF No. 1.

[2] ECF No. 17.

[3] *Id.* at 3.

[4] ECF No. 34 at 9–11.

[5] *See* ECF No. 36 at 9, n. 3 ("Vargas does not object to the R&R's finding that the officers had reasonable suspicion to stop the Chrysler and were legally authorized to order him out of the car.").

[6] ECF No. 34 at 14.

portion of the Report and Recommendation.[7]

Having reviewed the challenged portions of Magistrate Judge Koppe's findings and conclusions de novo, I find that the officers had reasonable suspicion to believe that Vargas was armed and presented a safety risk and, thus, I find that the patdown was lawful and that the pistol that was recovered as a result of that patdown should not be suppressed. Accordingly, I adopt Judge Koppe's recommendation, overrule Vargas's objection, and deny Vargas's motion to suppress.

## I.   Standard of review

A district court reviews objections to a magistrate judge's proposed findings and recommendations de novo.[8] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[9] The standard of review applied to the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[10] Local Rule IB 3-2(b) requires de novo consideration of specific objections only.[11] Because Vargas challenges only Judge Koppe's finding that the patdown was supported by reasonable suspicion to believe that he was armed and dangerous and was, therefore, lawful, I evaluate only that issue de novo. I adopt all other findings and conclusions without further review.

## II.   Discussion

Magistrate Judge Koppe conducted an evidentiary hearing on the suppression motion and recounted the events as established by the evidence in her Report and Recommendation.[12] Having

---

[7] ECF No. 44.

[8] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

[9] *Id.*

[10] *Id.* (stating that a "district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise") (emphasis in original).

[11] *See* L.R. IB 3-2(b) (requiring de novo consideration of specific objections only).

[12] ECF Nos. 29, 34.

reviewed the evidence received at, and the transcript of, that hearing,[13] I find that Judge Koppe's summary of the events as established by the evidence is accurate. So I adopt the "Background" portion of her Report and Recommendation in toto, and I do not restate those events here because the parties are familiar with them. I do, however, add several additional details from the events as they are relevant to my analysis.

Vargas argues that I should overrule Judge Koppe's recommendation and grant his suppression motion because her recommendation: (1) "misapplies caselaw suggesting 'time of day' can be relevant to the reasonable suspicion analysis"; (2) erroneously relies on his refusal to answer questions as a factor in the reasonable suspicion analysis; and (3) ignores Ninth Circuit precedent holding that nervousness and hand movements are insufficient to create reasonable suspicion.[14]

Vargas also argues that other facts in the record that Judge Koppe did not rely on also do not establish reasonable suspicion that he was armed and dangerous.[15] In particular, Vargas argues that: (1) Officer Hefner's assertion that the vehicle was stopped in a "high-crime area" is unsupported by the record; (2) driver Green's traffic violations and her status as a known narcotics user and trafficker are irrelevant to whether officers had reasonable suspicion to believe he, a passenger, was armed and dangerous; (3) his statement that he had a gun after Officer Kunz began the patdown cannot give rise to reasonable suspicion; and (4) "even if Officer Kunz reasonably believed [he was] armed, he had no basis to believe [he] was dangerous."[16]

Magistrate Judge Koppe found that "looking at the totality of the circumstances" a reasonably prudent person in Officer Kunz's position would have been warranted to believe that Vargas was armed and presented a threat to the officers' safety because: (1) the stop occurred at night when it was dark outside; (2) Vargas "refused to even look at [Officer Kunz], instead staring straight forward and refusing to acknowledge the officer's questions"; (3) Vargas "appeared nervous, as his hands

---

[13] ECF No. 35.

[14] ECF No. 36 at 9.

[15] *Id.* at 30.

[16] *Id.* at 30–37.

were shaking"; and (4) Vargas ignored Officer Kunz's instructions to keep his hands visible by reaching for his pockets multiple times for an object that was not visible, "causing Officer Kunz to fear for officer safety."[17] Judge Koppe, therefore, found that the patdown was lawful and recommends that I deny Vargas's suppression motion.[18]

"A lawful frisk does not always flow from a justified stop."[19] Rather, "a *Terry* frisk of a person for weapons requires reasonable suspicion that a suspect 'is armed and presently dangerous to the officer or to others.'"[20] "Each element, the stop and the frisk, must be analyzed separately; the reasonableness of each must be independently determined."[21] "To establish reasonable suspicion a suspect is armed and dangerous, thereby justifying a frisk, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"[22] "Reasonable suspicion is an objective standard, asking whether 'a reasonably prudent [person] would have been warranted in believing [the suspect] was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior.'"[23] "A mere inchoate and unparticularized suspicion or hunch that a person is armed and dangerous does not establish reasonable suspicion, and circumstances suggesting only that a suspect would be dangerous if armed are insufficient."[24] Rather, there must be adequate reason to believe the

---

[17] ECF No. 34 at 14.

[18] *Id.* at 14–15.

[19] *U.S. v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988).

[20] *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)).

[21] *Dillard*, 818 F.3d at 876 (internal quotation marks and citations omitted).

[22] *Id.* (quoting *Terry*, 392 U.S. at 21).

[23] *Id.* (quoting *Terry*, 392 U.S. at 28).

[24] *Id.* (internal quotation marks and citations omitted).

suspect is armed.[25]

Officer Kunz had more than a mere inchoate and unparticularized suspicion that Vargas was armed and dangerous. Officers Kunz and Hefner both testified about specific articulable facts that, when taken together, provide a rational inference that Vargas was armed and presently dangerous. First, Officer Hefner testified that he conducts "a lot" of stops in the area where the instant stop occurred because of "drugs, weapons, and violent crimes that occur there."[26] He also testified that the driver of the vehicle, Kristal Green, is a known narcotics user and trafficker and is a "known problem person in the area."[27] Officer Kunz also testified that he had "dealt with [Green] numerous times in the past."[28]

These facts and considerations may be individually insufficient to establish reasonable suspicion, but they are relevant to the overall reasonable-suspicion analysis. The Ninth Circuit has recognized that the reasonable-suspicion "inquiry requires consideration of all the facts and circumstances an officer confronts in the encounter . . . consider[ing] the totality of the circumstances"[29] and in the light of the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers."[30] Thus, it is not dispositive that any single fact or consideration, evaluated alone, could not support reasonable suspicion.

The nature of the stop area and the fact that the driver of the stopped vehicle was well known to law enforcement, coupled with the inferences that the officers reasonably drew from those facts also supplied context to the events that the officers encountered. Officer Kunz testified that when he reached the passenger side of the Chrysler, he looked inside the vehicle and saw Vargas looking

---

[25] *Id.*

[26] ECF No. 35 at 8 (transcript of the evidentiary hearing).

[27] *Id.* at 8–11.

[28] *Id.* at 49.

[29] *Dillard*, 818 F.3d at 876 (internal citations omitted).

[30] *U.S. v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010).

straight ahead with his hands in his lap and he was shaking.[31] Officer Kunz testified that he asked Vargas for identification and also asked whether there were any weapons or narcotics in the vehicle and, rather than responding, Vargas continued to look straight ahead and did not acknowledge Officer Kunz.[32] Officer Kunz testified that he and officer Hefner asked Vargas and Green to step out of the vehicle because both officers were going to be walking away from the vehicle and without confirmation that there were no weapons in the vehicle, officers wanted Green and Vargas "at least somewhere visible and [to] not have access to any weapons in the vehicle."[33]

Officer Kunz also testified that after Vargas exited the vehicle, he instructed Vargas to keep his hands where he could see them because the loose nature of Vargas's clothing left the officer uncomfortable with Vargas reaching for his pockets.[34] But as he and Vargas began walking the 15-foot span between the stopped vehicle and the patrol car where Officer Kunz intended to continue questioning Vargas and also seek permission from him to perform a patdown, Vargas began "continually motion[ing] or mov[ing] his hands towards his pockets."[35] Officer Kunz testified that he "again stated don't reach for your pockets," but Vargas disregarded that warning and reached again.[36] It was at this point that he grabbed Vargas's hands and told him again to stop reaching for his pockets before beginning a patdown search of Vargas for the officers' safety.[37]

Vargas argues that his pocket-reaching cannot support reasonable suspicion because the Ninth Circuit in *U.S. v. I.E.V.*[38] held that a *Terry* search is not justified "based on mere nervous or

---

[31] ECF No. 35 at 50.

[32] *Id.* at 51.

[33] *Id.*

[34] *Id.* at 53, 55–58.

[35] *Id.* at 54.

[36] *Id.*

[37] *Id.*

[38] *U.S. v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012).

1  fidgety conduct and touching of clothing."[39]  In *I.E.V.*, the Ninth Circuit found that the patdown of a
2  passenger of a vehicle that was stopped at United States Border Patrol checkpoint was
3  unconstitutional because: (1) the officers who conducted the stop testified that the defendant "acted
4  in a compliant and nonthreatening manner"; (2) "the only specific evidence the government offered
5  to justify the frisk was that . . . the defendant . . . seemed very nervous and continually touched his
6  abdomen area"; and (3) the "officer had already completed a large portion of his investigation of the
7  vehicle without facing any threatening behavior," undermining the "'well-settled . . . purpose of a
8  *Terry* stop . . . to allow the officer to pursue his investigation without fear of violence.'"[40]

9       Unlike the defendant in *I.E.V.*, Vargas was not compliant with the officer's questions or
10 commands.  Despite receiving three warnings to not reach for his pockets, Vargas did so twice in the
11 short time it took him to walk less than 15 feet[41] and he did so after refusing to respond to, or even
12 look at, Officer Kunz when asked for his identification.  And whereas the defendant in *I.E.V.* merely
13 touched his abdominal area through his shirt, a place void of pockets from which a weapon could be
14 pulled, Vargas was reaching for the pocket of his baggy pants where a weapon could easily have
15 been (and, in fact, was) concealed.  Finally, unlike the defendant in *I.E.V.,* who was searched after
16 the officers had nearly completed their investigation of the car, Vargas was patted down almost
17 immediately after exiting the vehicle and only after he twice disobeyed Officer Kunz's three
18 warnings not to reach for his pockets.

19      Also unpersuasive is Vargas's argument that *United States v. McKoy*, cited by the Ninth
20 Circuit in *I.E.V.*, controls.  In *McCoy*, the defendant was patted down after officers asked him for
21 identification and he reached for the glove compartment of his car.  The court reasoned that "the
22 defendant's gestures in [*McCoy*], while potentially to hide a weapon, were also consistent with
23 reaching for a driver's license."[42]  Vargas was reaching for his pocket and not a glove compartment.

---

[39] ECF No. 36 at 26 (citing *id.*).

[40] *I.E.V.*, 705 F.3d at 433–38 (quoting *U.S. v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)).

[41] ECF No. 35 at 54–57.

[42] *I.E.V.*, 705 F.3d at 438 (citing *U.S. v. McKoy*, 428 F.3d 38, 40 (1st Cir.2005)).

And it is unlikely that he was reaching for identification because he had already refused to produce identification when asked.  Unlike the defendant in *McCoy* who might have plausibly been complying with an officer's request, Vargas was doing the very thing Officer Kunz ordered him not to do: he was making repeated attempts to reach for an object in his pocket that Officer Kunz could not see due to the baggy nature of Vargas's clothing.

The Ninth Circuit has held that "sudden movements by defendants, **or repeated attempts to reach for an object that was not immediately visible**, [are] actions that can give rise to a reasonable suspicion that a defendant is armed."[43]  Vargas made repeated attempts to reach for an item in the pocket of his loose-fitting clothing that was not immediately visible to Officer Kunz, and he did so despite repeated instructions from the officer not to.  This conduct, when combined with the other circumstances of the stop—the darkness, Vargas's refusal to even look at the officer, his apparent nervousness and shaking hands, and his association with a known narcotics trafficker in a high-crime area—would have caused a reasonably prudent person in Officer Kunz's position to believe that Vargas was armed and presented a threat to officer safety.[44]  I, therefore, find that Officer Kunz's patdown of Vargas was lawful.

### III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Vargas's objections to Judge Koppe's report and recommendation **[ECF No. 36] are OVERRULED**, Judge Koppe's report and recommendation **[ECF No. 34] is ADOPTED**, and Vargas's motion to suppress **[ECF No. 17] is DENIED.**

Dated July 24, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

[43] *U.S. v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006) (citing *U.S. v. Flippin*, 924 F.2d 163, 164–66 (9th Cir. 1991)) (emphasis added).

[44] In making this finding, I do not consider Vargas's statements to Officer Kunz after the patdown had already began—that he had a gun "in there" and that he did not have a license to carry a concealed weapon—because these subsequently made statements are irrelevant to the analysis of whether the circumstances leading up to the patdown were sufficient to warrant a belief that Vargas was armed and presently dangerous before the patdown began. ECF No. 35 at 12–13.